**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DOUGLAS E. BELLOWS,<br><br>                              Plaintiff,<br>   vs.<br><br>MIDLAND CREDIT MANAGEMENT,<br>INC. and MIDLAND FUNDING LLC,<br><br>                              Defendants. | CASE NO. 09CV1951-LAB (WMc)<br><br>**ORDER GRANTING PETITION TO COMPEL ARBITRATION** |

Plaintiff Douglas Bellows, a credit card holder, brought this putative class action[1] alleging violations of the Fair Debt Collection Practices Act.  The complaint alleges Defendants Midland Credit Management and Midland Funding LLC (collectively, "Midland") purchased Bellows' credit card debt, then used harassing and abusive methods to collect it. Midland then filed a petition (the "Petition") seeking to compel arbitration, pursuant to an arbitration clause in the credit card user's agreement.

The Petition attached supporting evidence in an effort to show what that Bellows had entered into the card user's agreement, and that Midland was the successor to that agreement.  Bellows resisted arbitration on two grounds.  His opposition first briefly questioned Midland's evidence and whether he and Midland had an agreement to arbitrate.

---

[1] The caption does not identify this as a class action, but the Complaint, ¶¶ 51–58, includes class allegations.

The bulk of his opposition opposed arbitration as a matter of state law and public policy. Specifically, Bellows cited *Discover Bank v. Superior Court*, 36 Cal.4th 148 (2005) for the principle that arbitration clauses that are unconscionable under state law will not be enforced.

The party seeking arbitration (here, Midland) bears the burden of proving the existence of a valid arbitration agreement, and a party opposing the petition (here, Bellows) bears the burden of proving any fact necessary to its defense. *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1005 (9th Cir. 2010) (quoting *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal.4th 951 (1997)). For this purpose, unconscionability is a defense and Bellows therefore bears the burden of proving any fact necessary to support that defense. *See Smith v. Americredit Financial Servs, Inc.*, 2009 WL 4895280, at *4 (S.D.Cal., Dec. 11, 2009) (citing *Crippen v. Central Valley RV Outlet, Inc.*, 124 Cal.App.4th 1159, 1165 (Cal. App. 5 Dist. 2004)).

**I. Whether the Arbitration Clause Was Validly Entered into and Is Enforceable by Midland**

Midland has submitted the affidavit of Stuart Austin, the Bad Debt Sales Manager for HSBC Bank Nevada, N.A. (Petition at 9–10.) Austin declares Bellows opened an account with HSBC on July 22, 2003, that he was issued a credit card, and that as part of the issuance oft he card, Bellows agreed to the terms of the Cardmember Agreement and Disclosure Statement (the "Agreement"). (Austin Decl., ¶ 2.) The declaration also authenticated the Agreement, which is attached as Exhibit A to the Petition. The declaration says Austin either has personal knowledge of the facts he declares, or that he obtained them from HSBC's business records. (*Id.*, ¶ 1.) A second, more legible copy of the Agreement, is attached to Midland's reply brief, authenticated by the declaration of Todd Stevens as a true and correct copy of the Agreement Austin declared to be genuine.

The Agreement includes an arbitration clause providing for mandatory binding arbitration by the National Arbitration Forum, the American Arbitration Association, or JAMS
/ / /

if either party elects it. (Reply, Docket no. 22-1, at 10.)[2] Issues to be arbitrated include "any claim, dispute, or controversy . . . arising from or relating to this Agreement, including the validity or enforceability of this arbitration clause . . . ." (*Id.*) The Agreement also provides that both it and the account are assignable: "We may sell, assign or transfer your Agreement and Account or any portion thereof without notice to you." (*Id.* at 8.) By its terms, the Agreement would be entered into as soon as the card holder used the card: "You and we are bound by this Agreement from the date of your first transaction. You may cancel your Account before using it without paying any fees." (*Id.* at 4.)

Bellows, for his part, presents no evidence. Rather, he raises numerous objections to the admissibility of this evidence, and argues that more evidence is needed to prove Midland is a party to the Agreement and that the Agreement was validly entered into. These arguments fail, for two reasons. First, the evidentiary objections lack merit. Bellows argues the declarations 'are not based on personal knowledge, contain hearsay, and . . . violate the best evidence rule." The declarations, however, are based either on personal knowledge or on business records (bringing them within the business records exception). The authenticated copy of the Agreement is not rendered inadmissible by the best evidence rule merely because it is a duplicate and not the original. *See* Fed. R. Evid. 1003.[3]

Bellows also demands better evidence of the chain of title, to show that Midland duly purchased his account. This fails both because the evidence presented is adequate, and because Bellows himself, in the complaint, alleged that Midland bought the account. While Bellows admits Midland might be an assignee of the Agreement, he demands documentary proof of it, in the form of a bill of sale or the like. (*See, e.g.*, Opp'n at 9:28 ("At best

---

[2] The copy attached to the Petition appears in small print and the pertinent parts are legible, though not as easily read as the larger copy attested to by Stevens. A few words in the smaller copy, not affecting the overall meaning, appear to have been removed by a hole punch. For the sake of convenience, the Court will refer to the Stevens copy.

[3] This Rule provides a duplicate is admissible to the same extent as the original, unless a "genuine question is raised as to the authenticity of the original," or where it would be unfair to admit the duplicate in place of the original. While Bellows raises generalized questions about the admissibility of this duplicate, he doesn't question the accuracy of the original. The second, larger duplicate is likewise admissible.

Defendants may be assignees of the agreement, but even that proof is missing.")) But there is no reason to suppose that a formal written assignment was required or even contemplated. The Agreement's provision that the assignment could be accomplished even without notice to Bellows underscores this. Bellows admits he has no evidence that Midland is not an assignee; he simply demands documentary proof.

Where a party to a purported agreement to arbitrate attacks the existence of the agreement, whether the agreement was formed is ordinarily a question for the Court. *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1140 (9th Cir. 1991). Even if this were such a case, the Court would find that the Agreement was properly entered into, and that Midland is a successor to the Agreement. Midland has submitted adequate evidence to support these findings, and Bellows has submitted none. *Compare Cadaval v. Dean Witter Reynolds, Inc.*, 703 F. Supp. 922, 924 (S.D.Fla., 1989) (mere allegations that signatures on arbitration agreement might have been forged were insufficient to support a finding of invalidity).

But the decision is even easier here, because the arbitration agreement provides that the arbitrator is to decide questions concerning the validity of the arbitration agreement. *See Madrigal v. New Cingular Wireless Servs., Inc.*, 2009 WL 2513478, slip op. at *6 (E.D.Cal., Aug. 17, 2009) (citing *Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 11 (1st Cir. 2009) ("[T]he validity of an arbitration clause is itself a matter for the arbitrator where the agreement so provides."); *Terminix Int'l Co. v. Palmer Ranch Ltd. P'Ship*, 432 F.3d 1327, 1332 (11th Cir. 2005); *Monex Deposit Co. v. Gilliam*, 616 F. Supp. 2d 1023, 1026 (C.D.Cal., 2009)). As provided in the Agreement the determinations of whether the arbitration agreement was validly entered into, and whether Midland can enforce it, are committed to the arbitrator.

**II. Whether the Agreement to Arbitrate is Unenforceable Under California Law**

Bellows devotes the bulk of his opposition to this question, arguing that the agreement to arbitrate is both procedurally and substantively unconscionable under California law,[4] and

---

[4] Bellows agrees with Midland that, under California law, an agreement to arbitrate is unconscionable and will not be enforced only if it is both procedurally and substantively unconscionable. *See Stirlen v. Super Cuts, Inc.*, 51 Cal. App. 4th 1519, 1533 (Cal. App. 1

that federal law—specifically, the Federal Arbitration Act—does not preempt it. Bellows also argues that Nevada law may apply, and argues that it too would deem the arbitration agreement unconscionable.

**A. Excessive Fees**

The argument over unconscionably excessive fees easily disposed of. Bellows summarily argues that a cardholder could be charged substantial fees, and that distressed consumers could not afford such charges. This is unsupported by any citation to the Agreement or any other evidence, however. Nor does Bellows even provide a figure he thinks he or any other consumer would be charged. Under the Agreement, Bellows is liable for the first $50 of arbitration fees, after which the Midland, on Bellows' request, will pay the remainder, up to $1,500.[5] Midland agrees to consider requests to pay more, if the fees are higher,[6] and agrees to pay additional fees if the arbitrator grants an award in Bellows' favor. A savings clause provides that if a statute provides for an award of fees to the card holder, the statute overrides the Agreement. Bellows has made no real effort to show the fees would be excessive, and falls far short of meeting his burden of showing the arbitration agreement is unenforceable for this reason.

/ / /

---

Dist. 1997). Bellows argues that the agreement is procedurally unconscionable because it is presented on a "take it or leave it" basis, and substantively unconscionable because it includes a prohibition on class actions, as well as because the fees a consumer might incur could be substantial.

[5] This figure is not an unreasonable estimate of arbitration fees for smaller claims such as Bellows'. Under the National Arbitration Forum's current published fee schedule, for instance, the fees for arbitrating a claim between $19,001 and $35,000 (including filing fee, commencement fee, administrative fee, and a participatory hearing session fee for a 2-hour hearing) is $1350.

[6] This is significant because the rules of the approved arbitration associations may also require Midland to pay more. The JAMS Policy on Consumer Arbitrations Pursuant to Pre-Dispute Clauses, for example, allows a consumer to be charged no more than $250 towards the fees, with the company bearing the rest. If JAMS is arbitrating, Midland would apparently be required to grant Bellows' request to pay the entire cost of arbitration (except for $250) regardless of how high the fees were or which party prevailed. The National Arbitration Forum also caps consumer claimants' fees at $250, while the American Arbitration caps similar fees at $125 if the claim is $10,000 or less and $375 if the claim is from $10,000 to $75,000.

**B. Class Action Waiver**

Bellows relies principally on the inclusion of a class action waiver to show that the Agreement is unconscionable. This is the most substantial and difficult issue presented in the opposition. Besides *Discover Bank*, Bellows cites *Omstead v. Dell, Inc.*, 594 F.3d 1081, 1086–87 (9th Cir. 2009), in which the Ninth Circuit applied *Discover Bank* to find a class action waiver in an arbitration agreement unconscionable, rendering the entire agreement unenforceable.

In the course of its research on the issue, the Court also considered *Laster v. T-Mobile USA, Inc.*, 584 F.3d 849 (9th Cir. 2009). During the pendency of the Petition, however, the Supreme Court granted *certiorari* in *Laster*. Because the Supreme Court's disposition of the case could prove dispositive, the Court awaited the decision.

That decision has now issued. On April 27, 2011, the Supreme Court reversed *Laster*, *sub nom. AT&T LLC v. Concepcion*, ___ S.Ct. ____, 2011 WL 1561956 (Apr. 27, 2011), and disapproved of *Discover Bank*, holding it impermissibly interfered with the Federal Arbitration Act. That decision disposes of Bellows' best argument, making clear the agreement to arbitrate is not substantively unconscionable merely because it includes a class action waiver. It is therefore not invalid, and will be enforced.

**III. Conclusion and Order**

For these reasons, Midland's motion to compel arbitration is **GRANTED**. Midland has not provided the Court with a proposed order, however, and is therefore **ORDERED**, no later than **Thursday, May 5, 2011**, to lodge such an order, in editable electronic form, as required in this District's Electronic Case Filing Administrative Policies & Procedures Manual, § 2(h). The proposed order should grant on the relief sought in Midland's Petition (Docket no. 17).

**IT IS SO ORDERED**.

DATED: May 4, 2011

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge